**AIMEE DUPONT STUDIOS et v STINE et**

Ohio Appeals, 8th Dist, Cuyahoga Co

Decided December 8, 1930

Sidney N. Weitz, Cleveland, for plaintiffs.
Mooney, Hahn, Loeser, Keough & Beam, Cleveland, for defendants.

VICKERY, PJ.

Of course, if that were true, if George Stine had been delegated and authorized to purchase the Frank Moore Studios for and on behalf of his principals and while thus employed, or if he had resigned his position with them and purchased the studios in his own name, it would be such a breach of trust that whatever contract was made could and ought, by a court of equity, to be decreed to be the contract of the principal and not of the agent, and a court of equity could, with a proper decree compel the agent to transfer the property to the principal upon the principal's refunding to the agent the sum which he had paid for the property.

We think that is a well known principal of equity, but, of course, if the owner of the Frank Moore Studios had refused to deal with the plaintiff corporations, he could set aside the transaction because he did not wish to contract with those persons. They could not make him sell to them when he would not, but did sell to their agent, thinking he was dealing with the agent personally. We think the doctrine is well established by the authorities that an agent cannot profit at the expense of his principal; and if he buys in his own name the thing which he was delegated by the principal to buy for it, so far as he is concerned, the property belongs to his principal and could by a decree in equity be transferred from him to the principal.

So the important question is: Was George Stine, although an employee of the principal of the plaintiff corporations, delegated specially to buy this property? If he was, what we have said heretofore would govern for this lawsuit, and whether he was the agent at the time or resigned after he had been so delegated and then bought this property, would make no difference so far as a contract between him and his principals were concerned. Of course, if George

Stine was the employee, as he was, of the plaintiff corporations, that of itself would not prevent him from buying any property on his own responsibility, and he would be under no such fiduciary relation with them as would prevent him from going into business himself, only he must not buy the thing for himself which he had been authorized and directed to purchase for his principals. So that, while admitting that George Stine was the employee of the plaintiff corporations, that alone would not prevent him from dealing and buying this property for himself, and so it becomes important to know what this record shows upon that question.

Most of the evidence is in the form of letters from Stine. Only one letter from Mr. Sax and one telegram from Klimcheck, the two co-owners and principal stockholders in the plaintiff corporations are in the record. It seems that Stine learned of the probable sale of the Frank Moore Studios and communicated that fact to his principals and had in mind, I have no doubt, from this record, that his principals might be willing to buy. Several letters of that kind are in the record from him, and it seems that the first knowledge that the plaintiffs had of the Frank Moore Studios being for sale, was the communication from Stine, and then in January, 1929, he wired to one of the principal stockholders and officers in the plaintiff corporations in New York, Mr. Klimcheck, whether he would be interested in the purchase of the Frank Moore Studios for seven thousand dollars, and whether he would go fifty-fifty with him. That, in effect, was the proposition to buy this for the two of them. A telegram from the man to whom he telegraphed, Mr. Klimcheck, was to the effect that under no circumstances would he be interested in the proposition and turned it down. Later Mr. Sax, one of the principal stockholders and officers in the New York corporations, wrote a letter in which he expressly stated that they did not care to interest themselves in the Frank Moore Studios, that it had been a lemon, and they did not want to touch it and, I believe, the conversation between Stine and Sax was to the same effect.

Whereupon and after which Stine completed the purchase from Mr. Allyn who represented the owner of the Frank Moore Studios, who had died in January. Allyn representing the estate of the owner, took the matter up with Stine and eventually sold the property to Stine and the contract of sale was made in April, 1929. Stine took possession, he and his wife both having resigned their positions in the New York corporations, and undertook to build up the business of the Frank Moore Studios, when this suit was brought.

The case was heard in the Common Pleas Court and the Common Pleas Court in a very carefully considered opinion by Judge Jones found that the plaintiffs were not entitled to the relief that they sought, and decided in favor of the defendants. As I have already stated, the case came on appeal here, and we have heard the case upon the same evidence that was introduced below, the very able briefs and oral argument of counsel.

While we recognize the right of principals to reap the benefit of a contract made by their agent who is directed by the principals to buy property for them whenever he buys it in his own name and thus fails in his trust to his employers, yet the fact that he was employed by the principals to negotiate this sale from them must be proven by clear and convincing proof, and we have scanned this record and we cannot find any proof at all in it that would warrant any such inference.

Stine was working for these companies for many years at a meager salary of fifty dollars a week, and his wife was likewise working at a salary of thirty-five dollars a week, and one could hardly blame either of them for seeking to better their condition and position. One could hardly blame them for wanting to establish a business of their own and as already stated, simply because they are working as employees of the plaintiff companies would not prevent them from buying for themselves a property that was on the market, unless they had been delegated and authorized to buy it for their principals. That was the burden of the plaintiffs to prove, and we do not find the proof in this record that would warrant any such conclusion. It does seem that the plaintiffs, after Stine had left their employ, after all the years that he had been in their employ, and was seeking to build up a business of his own and to make the Frank Moore Studios, which Mr. Sax had declared to be lemon, a profitable enterprise, sought to hamper him in every possible way.

We think the evidence in this case clearly shows that Stine did everything that he could do to get his employers to buy this business and they declined and refused to buy it; that he had never been authorized or directed by them to buy it for them; that he purchased it for himself and he paid his own money for it, and the plaintiff corporations have no right or interest in it whatever; and the Common Pleas Court in coming to the conclusion it did was undoubtedly right, and we have been compelled to come to the same conclusion, and that is, that the plaintiff corporations

have no right, title or interest in this property; that Stine has the complete ownership of it; that he bought it for himself and that there is no evidence of fraud either actual or constructive in this record, and that the defendants are entitled to a decree in their favor, and the judgment of this court is that the petition of the plaintiff be dismissed and that a decree be entered for the defendants dismissing said petition. Order, see journal.

LEVINE and WEYGANDT, JJ, concur.